**Joseph SAPIA, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**Docket No. 03–2087.**

United States Court of Appeals, Second Circuit.

Argued:  May 18, 2004.

Appeal Reinstated June 6, 2005.

Decided:  Dec. 28, 2005.

Georgia J. Hinde, New York, NY, for Petitioner–Appellant.

Brian R. Michael, Assistant United States Attorney (David N. Kelley, United States Attorney for the Southern District of New York, Celeste L. Koeleveld, Assistant United States Attorney, on the brief), New York, NY, for Respondent–Appellee.

Before: WINTER, STRAUB, and LAY * Circuit Judges.

* The Honorable Donald P. Lay, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

STRAUB, Circuit Judge.

Petitioner–Appellant Joseph Sapia appeals from the final judgment of the United States District Court for the Southern District of New York (Allen G. Schwartz, *Judge*) denying a motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence. The motion is based on the government's failure to comply with 21 U.S.C. § 851(a)(1), which provides that, in order to sentence a defendant to an enhanced sentence based on a prior felony conviction, the government must file an information with the court before trial or the entry of a guilty plea.[1]

As reflected in the certificate of appealability, this case raises four issues:

(1) Whether the requirements of § 851 are jurisdictional;

(2) Whether the § 2255 claim is procedurally barred by Sapia's failure to raise the issue on direct appeal;

(3) Whether a waiver provision in Sapia's plea agreement forecloses the current challenge to his sentence; and

(4) Whether § 851 requires strict compliance, or whether substantial compliance—*e.g.*, actual notice to the defendant but not filing with the court—is sufficient.

We hold, first, that the requirements of § 851 are not "jurisdictional" and that a claim for failure to comply with § 851 is

thus subject to procedural default. Second, we find that, under the particular circumstances of this case, Sapia cannot show prejudice, which is necessary to excuse his failure to raise the issue on direct appeal. The sentencing court imposed a term of imprisonment well above the mandatory minimum triggered by the prior felony conviction, and there is no indication that the presumed existence of the mandatory minimum had any effect on the sentence. Because Sapia's § 2255 claim is procedurally barred, we need not address whether the claim is also barred by the waiver provision in his plea agreement or whether § 851 requires strict compliance.

## BACKGROUND

On September 20, 2000, pursuant to the terms of a plea agreement, Sapia pleaded guilty in the United States District Court for the Southern District of New York (Allen G. Schwartz, *Judge*) to one count of conspiracy to distribute and to possess with the intent to distribute five kilograms or more of mixtures and substances containing cocaine in violation of 21 U.S.C. § 846. In the plea agreement Sapia stipulated to a sentencing range of 240 to 293 months' imprisonment. That range reflected a Sentencing Guidelines range of 235 to 293 months[2] combined with a 240–month enhanced statutory minimum due to Sapia's prior felony conviction, pursuant to 21 U.S.C. § 841(b)(1)(A).[3] The plea agree-

---

**1.** Title 21, Section 851(a)(1), of the United States Code provides: "No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon."

**2.** The Guidelines range was derived from a base offense level of 36, a two-level increase

for possession of a firearm in connection with the offense, a two-level increase for the defendant's leadership role in the conspiracy, and a three-level decrease for acceptance of responsibility. This resulted in a total offense level of 37, with a Criminal History Category of II.

**3.** Sapia's plea to the conspiracy involving five kilograms (as alleged in the indictment) triggered the penalties in 21 U.S.C. § 841(b)(1)(A), which provides for a "term of

ment also contained a standard clause in which Sapia agreed neither to appeal nor to litigate under 28 U.S.C. § 2255 any sentence at or below the stipulated sentencing range of 240 to 293 months.

A sentencing hearing was held on January 3, 2001. As will be explained in greater depth below, the District Court calculated the Guidelines range to be 235 to 293 months' imprisonment but found that there was a statutory minimum of 240 months' imprisonment. Weighing various factors urged by the government and defendant, the District Court ultimately imposed a sentence of 270 months' imprisonment, to be followed by ten years' supervised release, and a $100 special assessment. Judgment was entered January 4, 2001.

On February 22, 2001, Sapia moved for an extension of time to file an appeal and filed a notice of appeal. The District Court, however, denied the motion for an extension of time on the grounds that it was untimely and that Sapia had failed to show cause or excusable neglect. Sapia then moved for reconsideration of the District Court's decision, but that motion was also denied. Thereafter, we dismissed Sapia's appeal to this Court for lack of appellate jurisdiction because Sapia failed to file a notice of appeal within ten days of the entry of judgment.

On January 28, 2002, Sapia filed a motion to vacate pursuant to 28 U.S.C. § 2254. The motion was presented to, and decided by, the same District Court that accepted the guilty plea and imposed the sentence. In pertinent part, Sapia claimed that he should not have been subject to the enhanced mandatory minimum because the government failed to comply with 26 U.S.C. § 851(a)(1). This claim was based on the fact that a prior felony information was not docketed as filed until the day *after* Sapia entered his guilty plea, whereas the statute requires filing of an information before the entry of a guilty plea. While the District Court accepted that the prior felony information had not been timely filed, it found that Sapia's due process rights were not violated. The court reasoned that, based on both the plea agreement and plea colloquy, Sapia had actual notice that the government intended to introduce his prior felony conviction to make him eligible for enhanced sentencing. The District Court thus denied the motion.[4]

Sapia timely appealed the denial of his § 2255 motion, and on May 22, 2003, we granted Sapia's motion for a certificate of appealability with respect to the four issues described above. On appeal, Sapia primarily argued that § 851's requirements are jurisdictional or, in the alternative, demand strict compliance. He thus asked us to reject the reasoning of the District Court that notice to the defendant about the intent to file and use a prior felony information could alleviate the failure to comply with § 851. By summary order dated August 4, 2004, we declined to address the legal issues at that time, finding that there was an open factual issue as to whether the government actually complied with § 851. *See Sapia v. United*

imprisonment which may not be less than 10 years or more than life," if the death or bodily injury did not result from the drug crime and if the defendant has no prior conviction for a felony drug offense. But "[i]f any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a

term of imprisonment which may not be less than 20 years and not more than life imprisonment." *Id.*

4. Sapia also raised a claim of ineffective assistance of counsel, which the District Court rejected and which is not at issue in this appeal.

*States,* 108 Fed.Appx. 661, 662–63 (2d Cir. 2004) (unpublished summary order). That is, the government admitted that the prior felony information was stamped "filed" the day after the guilty plea, but the government asserted that it had handed the information to the judge at the plea proceeding. We noted that, under the Federal Rules of Criminal (and Civil) Procedure, a judge may permit papers to be filed directly with the judge, but we found that the court transcript was not sufficiently clear to determine whether such a filing in fact occurred. *See id.* at 662 & n. * * *. We thus invoked the procedure outlined in *United States v. Jacobson,* 15 F.3d 19, 22 (2d Cir.1994), and remanded the case to the District Court "for a finding as to whether the government gave the prior felony information to Judge Schwartz prior to the entry of Sapia's guilty plea," and also for "a finding regarding whether Sapia or his counsel was served with a copy of the prior felony information prior to the entry of his guilty plea." *Sapia,* 108 Fed. Appx. at 663.

Because Judge Schwartz, regrettably, had passed away, the case was assigned upon remand to the Honorable Shira A. Scheindlin, United States District Judge for the Southern District of New York. After accepting affidavits from individuals present at the plea proceeding, by order dated May 10, 2005, the District Court found that the government could not establish that the prior felony information was actually filed with the court before Sapia's guilty plea. (It did not reach the issue of whether Sapia had been timely served with the information.) In light of the District Court's order, this appeal was reinstated on June 6, 2005.

## DISCUSSION

■ On an appeal from the denial of a § 2255 motion, we review a district court's conclusions of law *de novo* but will accept its factual findings unless they are clearly erroneous. *Rosario v. United States,* 164 F.3d 729, 735 (2d Cir.1998), *cert. denied,* 527 U.S. 1012, 119 S.Ct. 2355, 144 L.Ed.2d 250 (1999). The government has not challenged the District Court's factual finding that the prior felony information was not timely filed, and we accept that the government failed to comply with § 851, as least in the strict sense. The issues presented in the certificate of appealability, as identified above, are thus before us.

## I.

■ The initial question is whether the government's failure to comply with § 851 deprives a court of "jurisdiction" to impose an enhanced sentence. The significance of the issue is that "jurisdictional" defects cannot be waived and are not subject to procedural default. *See Prou v. United States,* 199 F.3d 37, 44–46 (1st Cir.1999) (addressing whether § 851's requirements are jurisdictional to determine whether normal rules of waiver and procedural default would apply); *see also Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702–03, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (noting that subject matter jurisdiction is not subject to parties' consent or doctrines of estoppel and procedural default); *United States v. Calderon,* 243 F.3d 587, 590 (2d Cir.2001) ("[J]urisdictional errors are not waived [by a plea agreement], because they affect the basic authority of a court to hear and decide a case."). If § 851's requirements are jurisdictional, Sapia could maintain his claim regardless of any potential procedural default or waiver of his right to appeal in his plea agreement.

This Court has not addressed the nature of § 851's requirements. It is true, as the defendant points out, that a number of courts have referred to § 851 as involving

the "jurisdiction" to impose an enhanced sentence. *See, e.g., Harris v. United States*, 149 F.3d 1304, 1306 (11th Cir.1998) (stating that "a district court lacks jurisdiction to enhance a sentence unless the government strictly complies with the procedural requirements of § 851(a)"); *United States v. Belanger*, 970 F.2d 416, 418 (7th Cir.1992) ("Failure to file the [§ 851] notice prior to trial deprives the district court of jurisdiction to impose an enhanced sentence."). But a majority of courts of appeal have now adopted the view that § 851 does not implicate a court's subject-matter jurisdiction; it simply constitutes a condition precedent to a court's authority to impose a statutorily enhanced sentence. *See United States v. Ceballos*, 302 F.3d 679, 690–92 (7th Cir.2002) (rejecting prior Seventh Circuit precedent stating that § 851 is jurisdictional), *cert. denied*, —— U.S. ——, 125 S.Ct. 1871, 161 L.Ed.2d 748 (2005); *United States v. Dodson*, 288 F.3d 153, 160 n. 9 (5th Cir.), *cert. denied*, 537 U.S. 888, 123 S.Ct. 32, 154 L.Ed.2d 150 (2002); *United States v. Mooring*, 287 F.3d 725, 727–28 (8th Cir.), *cert. denied*, 537 U.S. 864, 123 S.Ct. 259, 154 L.Ed.2d 106 (2002); *Prou*, 199 F.3d at 44–46.

We agree with the prevailing view, well supported by the reasoning in the above decisions, that § 851 is not "jurisdictional." The essential point is that "jurisdiction," as explained by the Supreme Court, refers to " 'a court's statutory or constitutional *power* to adjudicate the case,' " and § 851 simply "has nothing to do with [a court's] subject-matter jurisdiction" over a criminal case or a court's general power to impose a sentence. *Ceballos*, 302 F.3d at 692 (quoting with emphasis *United States v. Cotton*, 535 U.S. 625, 633, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), which held that certain defects in a criminal indictment were not "jurisdictional" in nature and were subject to plain error review where the defendant failed to object in the district court); *cf.*

*United States v. Thomas*, 274 F.3d 655, 664 (2d Cir.2001) (en banc) (applying plain error review to unpreserved claim regarding defects in the indictment). As the Court of Appeals for the First Circuit has explained, "Whether or not the prosecution files a timely section 851(a)(1) information, a federal district court plainly possesses subject-matter jurisdiction over drug cases. . . . Once subject-matter jurisdiction has properly attached, courts may exceed their authority or otherwise err without loss of jurisdiction." *Prou*, 199 F.3d at 45, *quoted by Mooring*, 287 F.3d at 727–28. Indeed, in this case, the District Court not only had subject matter jurisdiction to accept the plea and impose *a* sentence; it had the statutory authority to impose the 270–month sentence, even without the filing of a prior felony information. *See* 21 U.S.C. § 841(b)(1)(A) (providing for a maximum sentence of life).

We thus hold that the fulfillment of § 851(a)(1) is not "jurisdictional." Section 851 affects only the district court's authority to subject a defendant to an enhanced mandatory minimum based on a prior felony drug conviction. Therefore, a claim based on the failure to comply with § 851 is subject to waiver or procedural default.

## II.

There was no direct appeal from Sapia's conviction because the notice of appeal was not timely filed. Because a motion under § 2255 is not a substitute for direct appeal, Sapia has procedurally forfeited his claim involving the § 851 defect unless he can show "(1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence." *Rosario v. United States*, 164 F.3d 729, 732 (2d Cir.1998) (internal citations and quotations omitted), *cert. denied*, 527 U.S. 1012, 119 S.Ct. 2355, 144 L.Ed.2d 250 (1999).

Sapia attempts to establish cause by asserting ineffective assistance of counsel. Thus we inquire into whether the performance of Sapia's trial counsel " 'fell below an objective standard of reasonableness' " and whether the defendant "was prejudiced by counsel's deficient acts or omissions." *Johnson v. United States*, 313 F.3d 815, 818 (2d Cir.2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–90, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *cf. Prou*, 199 F.3d at 49 (finding that, where defendant asserts ineffective assistance of counsel to avoid procedural default, the "prejudice" inquiry under *Strickland* and the forfeiture doctrine is the same). For the reasons explained below, even assuming *arguendo* that his counsel's representation was objectively unreasonable, Sapia cannot show that any § 851 defect prejudiced him.

■ For a prejudice inquiry in a case such as this, the "question is whether, but for the lapse, there is a reasonable probability the sentence would have been the same." *Johnson*, 313 F.3d at 818. At least under the mandatory-Guidelines regime, prejudice would plainly exist where any error results in a sentence above the otherwise-proper Guidelines range. For example, prejudice was found in *Prou* where the failure to challenge a § 851 defect resulted in a mandatory minimum sentence almost two years greater than the Guidelines range. *Prou*, 199 F.3d at 41, 49–50. The inquiry is more difficult where, as in this case, the sentence imposed would fall within the appropriate Guidelines range even without any error.

In this latter kind of situation, we have inquired into whether the sentence was based particularly on its relative position in the (incorrect) Guidelines range, or whether the record indicates that the same sentence would have been imposed even if a lower range were applicable. *See Unit-*

*ed States v. Bermingham*, 855 F.2d 925, 935 (2d Cir.1988). In *Johnson*, for example, the district court improperly calculated the Guidelines range at 151 to 181 months (rather than 121 to 151 months), but it commented favorably on the defendant and imposed the minimum 151–month sentence for its identified range. *See Johnson*, 313 F.3d at 818. We found it unlikely that, but for the error, the defendant would have received the same sentence, which was at the top of the proper Guidelines range. *Id.* Similarly, in *United States v. Keigue*, 318 F.3d 437 (2d Cir. 2003), we found that a sentence was materially affected for the purposes of plain error review where the district court used the wrong version of the Guidelines, improperly set the Guidelines range at 12 to 18 months (rather than 10 to 16 months), and imposed a sentence of 15 months. *See id.* at 443. Particularly because the court expressed an intent to impose a sentence in the "middle" of Guidelines range, we found it likely that the defendant would have received 13 months' imprisonment had the proper range been identified. *Id.* at 444–45.

In this case, however, there is no indication that any error affected the sentence. The filing of the prior felony information was necessary to impose a mandatory minimum sentence of 240 months. Even without the prior felony information, the defendant was subject to an agreed-upon Guidelines range of 235 to 293 months. The presumed existence of the mandatory minimum thus had only a slight effect on the bottom of the available range. Meanwhile, in sentencing the defendant, the District Court expressly stated: "The guideline sentence here is high and my inclination, frankly, is to sentence the defendant to something above 235 months." The court then assumed that there was a 240–month mandatory minimum but noted

the seriousness of the offense and Sapia's role in it, as well as the strong indications of recidivism. In light of Sapia's age and health, the court decided "not to sentence him at the high end of the guidelines," but it also decided that it "was not going to give the defendant [the mandatory minimum of] 240 months." The court ultimately imposed a sentence of 270 months' imprisonment followed by 10 years' supervised release. The sentencing court thus clearly indicated an intent to sentence Sapia beyond 235 months and beyond the presumed statutory minimum. And there is no indication that the District Court otherwise relied on the mandatory minimum in determining the sentence.[5] Therefore, unlike in *Johnson* or *Keigue*, there is no inference that Sapia's sentence would have been different had the District Court recognized the § 851 defect and found the enhanced mandatory minimum inapplicable.

■ We do not find Sapia's arguments to the contrary persuasive. Sapia notes that counsel at sentencing consistently argued for the "minimum" sentence of 240 months; Sapia suggests that "[i]f the district court decided on the sentence it imposed by adding thirty months to the term urged by defense counsel, petitioner's sentence was thereby increased by at least five extra months." But there is no indication in the record that the District Court decided on the sentence in this manner. Sapia also suggests that the mandatory minimum may have prevented the District Court from inquiring into and providing downward departures based on, for example, acceptance of responsibility and Sapia's poor health. Sapia, however, had already received a three-point decrease in his total offense level for acceptance of responsibility, and there is no indication

that he would have been entitled to a downward departure for health reasons. Except in extreme situations, physical condition is not a basis for downward departures. *See* U.S.S.G. § 5H1.4 (policy statement). And defense counsel raised health reasons in arguing for the "minimum" of 240 months, but the court nevertheless imposed a significantly greater sentence.

· Finally, the defendant has invoked *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), in suggesting that we should allow the District Court in the first instance to determine whether a different sentence would have been given. *Crosby* was our response to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) ("*Booker/Fanfan*"); *Crosby* established a mechanism for cases that were pending on direct review and that involve unpreserved objections to a mandatory application of the Guidelines. *See generally Crosby*, 397 F.3d at 116–18. *Crosby* does not broadly displace this Court's role in determining prejudice in sentencing—whether in the form of harmless or plain error review or otherwise—where a *Booker/Fanfan* error is not at issue. Beyond the *Booker/Fanfan* context, a *Crosby*-style remand may still be appropriate where the record leaves us with no indication one way or another about the effect on the sentence. *Cf. Bermingham*, 855 F.2d at 935–36 (issuing remand to avoid deciding Guidelines dispute where sentence fell in overlapping portion of two Guidelines ranges and, based on the record, we could not find "with sufficient confidence" that sentence would have been the same regardless of which range applied). But the record in this case strongly indicates that the sentence was not affected by any § 851 error, and thus a remand is not warranted.

---

**5.** For example, 270 months is not the midpoint for either the 235–to–293 month range or the 240–to–293 month range. It is above the mid-point of both ranges.

220

## CONCLUSION

Because § 851's requirements are not jurisdictional, and because Sapia cannot show prejudice resulting from any non-compliance with § 851, Sapia's failure to appeal directly constitutes a procedural default that is fatal to his motion. Thus we need not decide whether Sapia's collateral attack on his sentence was foreclosed by a waiver provision in the plea agreement. In addition, although we do not necessarily agree with the District Court's reasoning that actual notice to Sapia could cure any § 851 defect, we have no occasion to decide whether § 851 requires strict compliance. The judgment of the District Court denying the § 2255 motion is AFFIRMED.