22-2324-pr
*United States of America v. De Goorte*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by federal rule of appellate procedure 32.1 and this court's local rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the federal appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of November, two thousand twenty-three.

PRESENT:
> JOSÉ A. CABRANES,
> DENNY CHIN,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

——————————————————————

ARMIN DE GOORTE, FKA OSAMA AHMED ABDELLATIF EL MOKADEM,

> *Petitioner - Appellant,*

> v.

> 22-2324

UNITED STATES OF AMERICA,

> *Respondent - Appellee.*

——————————————————————

FOR APPELLEE:                          COLLEEN P. CASSIDY, Federal Defenders of New York, Inc., New York, NY

FOR APPELLANT:                         BRANDON C. THOMPSON, (Hagan Scotten, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

Appeal from an order of the United States District Court for the Southern District of New York (Lewis J. Liman, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's order is **AFFIRMED.**

Defendant-Appellant Armin De Goorte challenges the district court's denial of his motion to vacate his conviction pursuant to 28 U.S.C. § 2255.   For the reasons explained below, we affirm.

In August 2019, De Goorte, an Egyptian national living in the United States with an expired visa, was arrested pursuant to a complaint by the Government charging him with wire fraud in violation of 18 U.S.C. § 1343, bank fraud in violation of 18 U.S.C. § 1344, and two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). After initially being represented by a public defender, De Goorte retained attorney James Schiff.

2

In January 2020, the Government obtained a superseding indictment, adding an additional count of bank fraud.

De Goorte pleaded guilty pursuant to a plea agreement in February 2020 to two counts of wire fraud and two counts of bank fraud. The plea agreement contained the following language with respect to the immigration consequences of De Goorte's conviction:

> The defendant recognizes that, if he is not a citizen of the United States, his guilty plea and conviction make it very likely that his removal from the United States is presumptively mandatory and that, at a minimum, he is at risk of being removed or suffering other adverse immigration consequences. . . . It is agreed that the defendant will have no right to withdraw his guilty plea based on any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the guilty plea and conviction.

J. App'x. at 140.

During the plea allocution, the court, the Honorable Alison J. Nathan, advised De Goorte that his guilty plea and conviction "make it very likely" that his "removal from the United States is presumptively mandatory and that, at a minimum, [he is] at risk of being removed or suffering other adverse immigration consequences." *Id*. at 157–58, 164–65. De Goorte replied that he understood the immigration consequences and he discussed them with his lawyer. *Id*.

In March 2021, the court sentenced De Goorte to a substantially below-Guidelines

3

term of 24 months in prison followed by three years of supervised release.    In July 2020, De Goorte married Heather Dickerson, an American citizen whom he had met in November 2019.

In June 2021, De Goorte learned that he would serve his sentence at a private facility for non-citizens convicted of federal crimes, and that he would automatically be deported after serving his term of imprisonment.    De Goorte claimed that he would not have entered his guilty plea had he been told that the plea would require his deportation. He also alleged that Schiff told him that the immigration language on the plea agreement was standard, and that Schiff never suggested that he consult with an immigration attorney before entering into the plea agreement.    De Goorte further noted that when the court stated that his removal would be "presumptively mandatory," he did not understand that language to mean anything different from what he had been told by Schiff: "that [De Goorte] did not actually have to worry about being deported."    J. App'x. at 537.

De Goorte moved for an order, pursuant to 28 U.S.C. § 2255, to vacate his judgment of conviction claiming that his agreement to plead guilty was the product of unreasonable and ineffective advice provided by Schiff.    In an affirmation, Schiff stated that he advised De Goorte early in the litigation that he should consult with an immigration attorney, but

4

that De Goorte responded that his visa did not have an expiration date. Schiff also stated that De Goorte did not initially express any concern about immigration consequences.

Schiff noted that De Goorte believed the immigration portion of the plea agreement was specifically tailored to him because the Assistant United States Attorney ("AUSA") and the Judge were trying to have him deported. In response, Schiff told De Goorte that neither the AUSA nor the Judge were trying to have him deported, and that the language was standard in every plea agreement. Schiff testified that he went over the plea agreement, including the immigration consequences, with De Goorte in two separate meetings. J. App'x at 413–14.

Schiff stated that he never told De Goorte to ignore the immigration warnings in the plea agreement. He told De Goorte that if he was sentenced as an undocumented individual, he very likely would get deported, but that De Goorte "might" avoid deportation by marrying Dickerson or receiving a non-incarceratory sentence. J. App'x at 463–73.

In September 2023, the district court, the Honorable Lewis J. Liman,[1] held an evidentiary hearing on the Section 2255 motion. De Goorte, Schiff, and Dickerson all

---

[1] On May 5, 2022, this case was reassigned to Judge Liman following Judge Nathan's elevation to this Court.

testified.   The court issued an opinion and order denying the Section 2255 motion.   *See De Goorte v. United States*, 2022 WL 4364880 (S.D.N.Y. Sept. 20, 2022).   The court found Schiff's testimony credible but found neither De Goorte's nor Dickerson's testimonies credible.[2]   *Id*. at *17 n.5, 18.   The court determined that De Goorte had not shown that Schiff's counsel fell below an objective standard of reasonableness or that he was prejudiced by Schiff's advice.   *Id.* at *17.

The court concluded that Schiff's advice concerning how to achieve the lowest possible jail sentence and possibly avoid deportation was "eminently reasonable."   *Id.* at *19.   This appeal followed.   We assume the parties' familiarity with the additional underlying facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## DISCUSSION

"On an appeal from the denial of a § 2255 motion, we review a district court's conclusions of law *de novo* but will accept its factual findings unless they are clearly erroneous."   *Sapia v. United States*, 433 F.3d 212, 216 (2d Cir. 2005).

---

[2] The district court placed little weight on Dickerson's testimony, describing her as "not a disinterested witness," and finding "her testimony regarding what Schiff purportedly told her . . . conclusory and lack[ing] any details."   *De Goorte v. United States*, 2022 WL 4364880 at *21 n.5. Further, the court noted that it "does not find Dickerson's testimony to be particularly probative as she was not present for any of the conversations that are critical to the disposition of this motion."   *Id*.

To show that counsel's assistance was constitutionally ineffective, a defendant must demonstrate that: (1) counsel's performance "fell below an objective standard of reasonableness" and (2) "the deficient representation prejudiced the defendant." *United States v. Gahagen*, 44 F.4th 99, 107 (2d Cir. 2022) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). In evaluating counsel's performance under the first prong of *Strickland*, "a reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Venturell*a, 391 F.3d 120, 135 (2d Cir. 2004). To demonstrate prejudice—*Strickland's* second prong—in the context of a guilty plea, a defendant must show a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

## I. Reasonableness of Schiff's Representation

First, we address De Goorte's argument that his case is analogous to *Padilla v. Kentucky*, 559 U.S. 356 (2010). In *Padilla*, the defendant's attorney told the defendant that he "did not have to worry about immigration status" when, in fact, his plea would make his deportation presumptively mandatory. 559 U.S. at 359, 369. But the record here does not resemble the record in *Padilla*. Schiff advised De Goorte that he "very likely" faced deportation. Further, the district court credited Schiff's testimony that he went

7

over the language of the plea agreement twice, in two separate meetings with De Goorte, and never gave De Goorte any advice contrary to the warning that he would be deported. *De Goorte*, 2022 WL 4364880, at *17. Schiff also advised De Goorte to consult with an immigration attorney well before De Goorte pleaded guilty. There is no evidence in the record to suggest that, as a factual matter, Schiff's statements to De Goorte that he "might" be able to avoid deportation through marriage or a non-incarceratory sentence were inaccurate. The district court also credited Schiff's testimony that although he told De Goorte those provisions were standard and not specifically targeted to him, Schiff did not advise De Goorte to ignore them. De Goorte does not challenge the court's finding that Schiff's testimony was credible.

De Goorte also faults Schiff for using words such as "likely" and "very likely" to describe his odds of being removed. De Goorte argues that this language is contrary to what the Court requires in *Padilla*—advising that a guilty plea will subject the defendant to the "truly clear" consequence of presumptively mandatory deportation. 559 U.S. at 357. De Goorte does not say why an attorney cannot explain legal terms using more accessible language than "presumptively mandatory." As the district court explained, "the Sixth Amendment does not require counsel to recite those words," such as presumptively mandatory, "*in haec verba.*" *De Goorte v. United States*, 2022 WL 4364880

8

at \*17. De Goorte cannot dispute that Schiff's advice put him on notice that his guilty plea would place him at serious risk of deportation.

Ultimately, the district court found that Schiff's overall defense strategy "was eminently reasonable and had a possibility of success." *Id.* at 19. As the district court correctly found, Schiff did not give De Goorte incorrect advice or undermine the warnings in the plea agreement but rather, properly advised him that deportation would be very likely if he were convicted. Counsel's performance did not fall below the objective standard of reasonableness.

## II.    Prejudice

De Goorte contests the district court's conclusion that De Goorte did not show prejudice because he did not prove that avoiding deportation was his primary concern.

The record does not demonstrate that De Goorte placed a high value on avoiding deportation and, thus, would have elected to go to trial rather than take a guilty plea. A defendant's background, history in the United States, family circumstances, and gainful employment all provide circumstantial evidence about whether a defendant placed particular emphasis on immigration consequences in deciding to plead guilty. *Doe v. United* States, 915 F.3d 905, 912 (2d Cir. 2019). Although De Goorte had been in the United States for nearly fifteen years at the time of his guilty plea, he has no relatives and

9

very few close friends in the United States.   His mother and siblings reside in Egypt. As noted by the district court, he had no legal employment history but was in the process of trying to launch a business.   He admitted that his closest connection in the United States was Dickerson, whom he first met after charges were brought against him in this case and whom he married on the advice of counsel.   Schiff's testimony, which the court credited, was that De Goorte's primary concern or motivation was not avoiding deportation but rather incarceration.   These facts do not support De Goorte's claim that immigration consequences were his primary concern.

The district court's conclusion that the evidence does not support a finding of prejudice because immigration was not De Goorte's primary concern was not clearly erroneous.   The record establishes that at the time of the plea, De Goorte would have taken the plea deal even if his counsel's advice regarding immigration consequences could be deemed unreasonable.

We have reviewed De Goorte's other arguments and find them to be unavailing. For the foregoing reasons, the order of the district court denying De Goorte's motion to vacate his conviction is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10